No. 96-1736

Minnesota Homecare Association,    *
Inc. CommuniCare Home Care;        *
First Respiratory Services,        *
Inc.; Kanabec County Public        *
Health; Metropolitan Visiting      *
Nurse Association; Pine to         *
Prairie Home Health Care;          *
PrairieLand Home Care, Inc.;       *
R.E.M. Health, Inc.; Saint         *
Cloud Hospital Home Care           *
Services; St. Joseph's Hospital    *
St. Mary's Medical Center Home     *    Appeal from the United States
Care; Samaritan Bethany Home       *    District Court for the
Health Services; Shamrock          *    District of Minnesota.
In-Home Nursing Care, Inc.;        *
Sibley County Public Health        *         [PUBLISHED]
Department,                        *
                                   *
        Appellants,                *
                                   *
    V.                             *
                                   *
Maria Gomez, Commissioner,         *
State of Minnesota Department      *
of Human Services                  *
                                   *
        Appellee.                  *

Submitted: November 21, 1996

Filed:      March 14, 1997

Before BEAM and LOKEN, Circuit Judges, and MOODY,[*] District Judge.

PER CURIAM.

    Home health care agencies in Minnesota and the state association of
home health care providers brought an action against Minnesota's
Commissioner of the Department of Human Services ("DHS"

---

    [*] The Honorable James M. Moody, United States District Judge
for the Eastern District of Arkansas, sitting by designation.

or the State), claiming that the State's rate-setting methodology governing reimbursements for home health care providers under the State's Medicaid program violates the statutory mandates of the Federal Medicaid Act, 42 U.S.C. § 1396 et seq. The agencies alleged that the DHS violated § 1396a(a)(30)(A) of the Act, referred to as the "equal access" provision, by implementing a change in the rates of payment without a mandated consideration of its effect on efficiency, economy, quality of care and access to services. They further alleged that DHS violated the statute by failing to maintain a monitoring system that assures that rates of payment continue to meet the goals of fostering quality care and access to services as required by the equal access provision.

On cross motions for summary judgment, the district court[1] granted summary judgment in favor of the State, concluding that the Medicaid Act does not require the kind of formal analysis advocated by the plaintiffs and finding that defendant's rate-setting methodology does not violate the Act.

We review the district court's granting of summary judgment de novo. Beyerbach v. Sears Co. II, 49 F.3d 1324, 1325 (8th Cir. 1995). After due consideration of the undisputed facts, arguments, and exhibits submitted by the parties, we affirm.

The Medicaid Act mandates consideration of the equal access factors of efficiency, economy, quality of care and access to services in the process of setting or changing payment rates, see Arkansas Med. Soc'y, Inc. v. Reynolds, 6 F.3d 519, 530 (8th Cir. 1993); however, it does not require the State to utilize any prescribed method of analyzing and considering said factors. In

---

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

the instant case, it is undisputed that the DHS had informal monitoring procedures in effect to evaluate the operation of its Medicaid program and to gauge the adequacy of its reimbursement rates.

Although the DHS did not provide any formal analysis of the equal access factors to the legislature in support of its consideration of the 1994 rate increase, the Minnesota HomeCare Association, and others lobbying on behalf of home care providers, actively participated in the 1993 legislative session during which the rate change was considered such that concerns of efficiency, economy, quality of care, and access to services were before the Legislature when it determined to raise the home health care reimbursement rates by three percent.

Under the circumstances of this case, we find that the State's methodology for establishing and maintaining home health care rates under its Medicaid program meets the requirements of 42 U.S.C. § 1396a(a)(30)(A). Accordingly, we conclude that summary judgment was properly entered in favor of defendant.

LOKEN, Circuit Judge, concurring.

Although I agree that appellants have insufficient evidence DHS violated 42 U.S.C. § 1396a(a)(30), I write separately because I do not believe appellants have stated a claim under § 1983. Their cause of action is premised on Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 524 (1990), in which the Supreme Court held that the Boren Amendment, § 1396a(a)(13), created an enforceable right "to have the State adopt rates that it finds are reasonable and adequate rates to meet the costs of an efficient and economical health care provider." In Suter v. Artist M., 503 U.S. 347, 359 (1992), the Court explained that Wilder turned on the fact that the Boren Amendment "actually required the States to adopt reasonable

-3-

and adequate rates," *and* "set forth in some detail the factors to be considered in determining the methods for calculating rates."

Like the Boren Amendment, § 1396a(a)(30) "requires each state to produce a *result*, not to employ any particular methodology for getting there." Methodist Hosps., Inc. v. Sullivan, 91 F.3d 1026, 1030 (7th Cir. 1996). One result -- the one providers such as appellants care about -- is the establishment of reimbursement rates that "are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographical area." § 1396a(a)(30(A). That is the result the state agency failed to produce in Arkansas Med. Soc'y, Inc. v. Reynolds, 6 F.3d 519 (8th Cir. 1993); we therefore held that the challenged rate violated federal law.

Here, on the other hand, appellants do not claim that Minnesota's *rates* violate § 1396a(a)(30) standards. They challenge DHS's "methodology" for assisting in rate development. However, this methodology was approved when the responsible federal agency approved Minnesota's plan. Appellants challenge process, not result. Their asserted right is "merely a procedural one," and the procedural interest they assert is so "vague and amorphous" as to be "beyond the competence of the judiciary to enforce." Wilder, 496 U.S. at 509-10.

That appellants have failed to state a § 1983 cause of action is confirmed by recalling that the Minnesota Legislature, not DHS, sets the reimbursement rates in question. Arkansas Medical Society involved agency ratemaking, and our decision applied administrative law principles (perhaps incorrectly, but that is a digression I need not pursue) in deciding that the rates were not adopted in compliance with § 1396a(a)(30). Federal courts do not undertake

administrative law review of legislative action, certainly not the action of a state legislature.  Review of statutory rates must be limited to whether their result in the marketplace is consistent with the substantive requirements of federal law.  Thus, appellants would engage us in an exercise in futility -- review of the "methodology" by which DHS gathers and feeds market information to the Legislature which the Legislature may then ignore when adopting statutory rates.  In reality, of course, appellants want the federal courts to force DHS to gather data that appellants' lobbyists can use in persuading the Legislature to raise the rates.  That is not the proper basis for a § 1983 claim.

**A true copy.**

       **Attest:**

          **CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.**