538 A.2d 625

Millville Health Center, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 20, 1987, before Judges MAC-PHAIL and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Charles O. Barto, Jr., Charles O. Barto, Jr. and Associates,* for petitioner.

*Diane J. Bartels,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, March 1, 1988:

Millville Health Center, Inc. (Petitioner) appeals a final order of the Department of Public Welfare (DPW) entered following reconsideration of an order of the Office of Hearings and Appeals (Office) adopting an attorney examiner's recommendation to deny in part Petitioner's appeal of a DPW determination.

Petitioner, as a provider of skilled nursing and intermediate care services under the Pennsylvania Medical Assistance Program, is entitled to a cost-related reimbursement for care provided to qualified medical assistance patients. *See* Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended,* added by Section 5 of the Act of July 31, 1968, P.L. 904, 62 P.S. §443.1. Depreciation on capital assets, which is the subject of this appeal, is an allowable cost for reimbursement. 55 Pa. Code §1181.412.

Petitioner changed ownership in October of 1981 when its assets were purchased by a new group of owners. Subsequently, for fiscal years ending June 30, 1982 and June 30, 1983, the new owners filed cost reports containing newly-assigned useful lives for depreciable assets allegedly based on American Hospital Association (AHA) guidelines. After audit by DPW, the useful lives of the assets were changed back to those used by the prior owner. This adjustment resulted in longer lives than the AHA guidelines would have per-

mitted, and accordingly, a lower depreciation allowance per year.

After a formal hearing, a DPW attorney examiner recommended that Petitioner's appeal of its depreciation allowance be denied.[1] The examiner concluded that even though DPW based its decision to hold Petitioner to the prior owner's choice of useful lives on an unwritten departmental policy, Petitioner "failed in its burden of proof by failing to support its assertion that the useful lives claimed were in accordance with the AHA guidelines." Adjudication at 4, Reproduced Record (R.R.) at 102a. The Office of Hearings and Appeals adopted the examiner's recommendation on January 27, 1986, and by preliminary order entered February 26, 1986, Petitioner's request for reconsideration of this determination was granted. On March 20, 1986, a final order was entered which, in effect, reaffirmed the decision of the Office of Hearings and Appeals.[2] Petitioner's appeal of this order is now before us.

Petitioner argues on appeal that the examiner erred in concluding that it had failed in its burden of proving compliance with the AHA guidelines, when the examiner found as fact that this was not in dispute.

Our scope of review of DPW's order is, of course, limited to a determination of whether the adjudication is supported by substantial evidence, is in accordance with law, or whether constitutional rights were violated. *Harston Hall Nursing and Convalescent Home, Inc. v.*

---

[1] Petitioner's appeal of a disallowance of administrators' compensation was sustained by the examiner, and no appeal was taken on this issue.

[2] Although reconsideration had been granted previously, DPW's final order stated, "the Request for Reconsideration filed by appellant is denied for the reasons stated by the Office of Hearings and Appeals."

*Department of Public Welfare,* 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986).

During the fiscal years in question, DPW regulations on the depreciation allowance provided in pertinent part:

> The amount of annual depreciation is determined by first reducing the cost of the asset by any salvage value and then dividing by the number of years of useful life of the asset. The useful life may be shorter than the physical life depending upon the usefulness of the particular asset to the provider. Facilities shall follow the guidelines on useful life published by the Internal Revenue Service or the Uniform Chart of Accounts and Definitions for Hospitals published by the American Hospital Association.

Section IV-D-9-a of the Manual for Allowable Cost Reimbursement for Skilled Nursing and Intermediate Care Facilities (Manual), 8 Pa. B. 2832, 2836 (1978).

At the hearing before the examiner, the DPW auditor testified that the asset lives used by DPW in reducing the depreciation allowance were taken from the prior owner's depreciation schedules. Notes of Testimony (N.T.) at 11, R.R. at 51a. When asked for his reason for using that schedule, the auditor replied, "It is Department policy." *Id.* On cross-examination, the witness testified that that policy had not been reduced to writing and was not incorporated in any DPW regulation. N.T. at 12, R.R. at 52a.

Petitioner's accountant testified that he thought AHA guidelines were used by the new owners, that he primarily used AHA guidelines and that he was not sure what method the prior owner used for determining the estimated useful life of the purchased assets but he was confident that they were not AHA or IRS guidelines. N.T. at 43, 44, R.R. at 83a, 84a.

Pertinent findings made by the examiner were:

2. At the time of purchase, appellant adjusted the useful life of the Millville Health Center assets to conform to AHA guidelines.

. . . .

5. For fiscal years 1982 and 1983, the Department's auditors, upon audit, adjusted the useful lives claimed by Millville to the lives assigned by the prior owner.

In the discussion portion of his adjudication, the examiner observed that Petitioner failed to introduce into evidence what the AHA guidelines were and, therefore, failed to meet its burden to show that the useful lives used by Petitioner were in accord with those guidelines. As we have noted, the examiner concluded that Petitioner's appeal must be denied because of failure to meet its burden of proof.

Petitioner contends that the only issue before the examiner was whether DPW's unpublished policy requiring new owners to continue using prior owner's useful lives, rather than conforming asset lives to IRS or AHA guidelines, was proper. When the examiner asked counsel at the outset of the hearing to state specifically what issues he was to address, counsel for Petitioner stated, *inter alia*, "It has to do with a disallowance by the Department of a reallocation of asset lives by Petitioner." N.T. at 5, R.R. at 45a. In his adjudication, the examiner set forth as the issue, "Did DPW properly adjust facility's useful asset lives?" Adjudication at 1, R.R. at 99a.

Petitioner argues that the examiner erred when he denied Petitioner relief solely because Petitioner failed to introduce evidence as to what the AHA guidelines were and that Petitioner's depreciation was in accord with those guidelines. Petitioner points out that DPW never challenged Petitioner's depreciation on the basis that such depreciation did not conform with AHA

guidelines and, furthermore, the examiner specifically found as a fact that Petitioner had adjusted the useful life of its assets "to conform to AHA guidelines." DPW more or less concedes in its brief and oral argument to us that Petitioner's argument in this respect is correct. DPW hastens to add, however, that it must still prevail because its regulations do not permit relifing in any event. This argument is based upon Section IV-D-9-b which provides:

> The method and procedure for computing depreciation must be applied from year-to-year on a consistent basis.

DPW contends that that regulation means that once a depreciation schedule has been established, it never can be changed.

DPW further argues that another paragraph in Section IV-D-9-a prohibits accelerated depreciation and if DPW were to allow Petitioner to change the useful life of Petitioner's assets here the result would be accelerated depreciation. In short, DPW contends that the examiner reached the right result, albeit for the wrong reason.

This Court has held that a reviewing court may affirm an order of an administrative agency if it is correct for any reason regardless of the reasons given by the tribunal whose order is under review. *Department of Public Welfare v. Dauphin County Social Services for Children and Youth,* 90 Pa. Commonwealth Ct. 295, 495 A.2d 214 (1985). That holding is based upon a decision of our Supreme Court in *Gwinn v. Kane,* 465 Pa. 269, 348 A.2d 900 (1975), which emphasizes that the rule applies only if the correct basis for the decision is clear upon the record. Here, DPW argues that in its brief to the examiner, it did cite Section IV-D-9-b as one of the regulations to be applied and that its witness did testify that the depreciation must be consistent from year to year.

It is true that we must give due regard to an administrative agency's interpretation of its own regulations and, indeed, hold such interpretation to be controlling unless it is plainly erroneous or inconsistent with the regulation or the statute under which it was promulgated. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

Our problem in this case is that neither the examiner nor the Office ever interpreted the regulations which DPW now argues are controlling, even though that issue was raised before the examiner. As we have noted several times, the sole basis for the denial of Petitioner's appeal was its failure to prove that the relifing was consistent with AHA guidelines because those guidelines were never introduced into the record. No position was ever taken by the examiner or the Office on DPW's contention that, under its regulations, the new purchaser of an ongoing facility may not relife the fixed assets of that facility. Nor does it appear from the record that Petitioner's *original* depreciation was based upon AHA or IRS guidelines as Section IV-D-9-a would seem to require.

We conclude that the examiner erred in denying Petitioner's appeal for failure to introduce into evidence the AHA guidelines and we, therefore, must remand this case for further consideration of the issues raised in this appeal: (1) must Petitioner's depreciation be based upon AHA or IRS guidelines and, if so, was such depreciation at any time prior to the recent purchase of the facility in accord therewith and (2) do the regulations found at Section IV-D-9 of the Manual require a new purchaser of the assets of an ongoing facility to retain the useful life of those assets as fixed by the prior owner?

It is so ordered.

176

The order of the Department of Public Welfare is vacated and the case is remanded for further consideration consistent with the foregoing opinion.

Jurisdiction relinquished.