541 A.2d 806

Centennial Spring Health Care Center et al., Petitioners v. Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 16, 1987, before Judges MAC-PHAIL and DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Suzanne Rauer*, with her, *Charles O. Barto, Jr.*, *Charles O. Barto, Jr. and Associates*, for petitioners.

*Bruce G. Baron*, Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, April 25, 1988:

Centennial Spring Health Care Center, North Penn Convalescent Center, Twinbrook Centers, Incorporated, and Medicenter of America (Petitioners) petition for review of a final order of the Department of Public Welfare (DPW) which denied their request for reconsideration of an order of the Office of Hearings and Appeals adopting a Hearing Officer's recommendation to deny the Petitioners' appeal from a decision of DPW's Claims Review, Bureau of Medical Assistance Operations (BMAO).

Petitioners are providers of long-term nursing care in the Pennsylvania Medical Assistance Program (Medicaid). Prior to 1984, residents[1] at the Petitioners' facili-

---

[1] The residents were recipients of Medicaid benefits.

ties received notification of reclassifications of their levels of care from skilled care to intermediate care via notices from DPW's Inspection of Care Team (ICT).[2] The residents here concerned appealed the ICT reclassifications and subsequently lost their appeals. During the pendency of the appeals, however, Petitioners were required to provide the residents with the same level of care that they were receiving prior to the ICT reclassification. 55 Pa. Code §1181.83(d).

Between July and August, 1984, Petitioners were notified by DPW that, pursuant to 55 Pa. Code §1181-.54(g), they were to return the money paid to them in excess of the amount authorized for intermediate care[3] during the pendency of the recipients' appeals. Accordingly, the Petitioners returned to DPW the amounts claimed by DPW as "overpayments." Between July and September, 1984, Petitioners timely appealed, and those appeals were consolidated for a June 24, 1985 hearing. In the notice of the hearing, Petitioners were informed that they were required to complete all discovery and identify all witnesses by June 14, 1985. On June 19, 1985, however, Petitioners requested the issuance of subpoenas duces tecum, which subpoenas were subsequently issued to David S. Feinberg, Michael A. Berchock, and Richard H. Lee.[4] DPW filed a motion to quash the subpoenas, and that motion was denied by the Hearing Officer. Subsequently, however, the Execu-

---

[2] The record gives no indication as to the dates on which the recipients received the ICT notices. It is clear, however, that the notices were received sometime prior to July of 1984.

[3] The Petitioners, as providers of skilled care, were compensated for providing such services to the recipients prior to the dismissal of their ICT reclassification appeals.

[4] The subpoenaed DPW officials were to appear and testify at the June 24, 1985 hearing with regard to DPW's policy concerning overpayments.

tive Deputy Secretary of DPW vacated the subpoenas issued to Messrs. Berchock and Lee. Accordingly, the only enforceable subpoena was issued to Mr. Feinberg.

On June 24, 1985, an administrative hearing was held and, on April 11, 1986, a Recommendation was made that the Petitioners' appeals be denied.[5] The Recommendation was adopted in full by the Director of DPW's Office of Hearings and Appeals. Thereafter, the Petitioners applied for reconsideration, and a preliminary order was entered granting such. The Deputy Executive Director subsequently entered a final order which, in effect, reaffirmed the decision of the Office of Hearings and Appeals.[6] Petitioners filed the petition for review currently before us.

Our scope of review of a DPW adjudication is limited to determining whether or not constitutional rights were violated, an error of law was committed, or necessary findings are unsupported by substantial evidence. *Harston Hall Nursing and Convalescent Home, Inc. v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986).

Preliminarily, we note that pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396s (Title XIX), the states have been given broad discretion in developing Medicaid programs. In Pennsylvania, the General Assembly has vested DPW with the authority

---

[5] The Hearing Officer reasoned that she had no authority to overturn, change or modify the DPW regulation found at 55 Pa. Code §1181.54(g).

[6] Although reconsideration had been granted by the preliminary order, DPW's final order stated, "the Request for Reconsideration filed by appellant is denied for the reasons stated by the Office of Hearings and Appeals." We will, once again, treat this as a final order on the merits of Petitioners' claim. *See Millville Health Center, Inc. v. Department of Public Welfare,* 114 Pa. Commonwealth Ct. 169, 538 A.2d 625 (1988).

to promulgate regulations for the administration of the Medicaid Program in accordance with federal law. *See* Section 201 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §201; *Keller v. Department of Public Welfare*, 502 Pa. 58, 463 A.2d 1007 (1983). Accordingly, DPW promulgated Section 1181.54(g) pursuant to the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§1102-1602 and 45 Pa. C. S. §§501-509. Section 1181.54(g) provides:

> If the recipient or the person or the nursing facility acting on behalf of the recipient appeals an action of the Department to change the level of care for which payment is authorized within the time period specified on the advance notice issued by the County Assistance Office, the Department will make payment to the facility for the level of care the recipient is presently receiving pending the outcome of the hearing in accordance with §275.4(a)(3)(iii) (relating to procedures). If the Department is sustained in its action, the Department will recover from the facility any payment in excess of the amount that would have been made if the action of the Department had not been appealed. The period for which the Department will recover excess payment runs from the effective date specified on the advance notice to the date that the appropriate change in the level of care for which payment is authorized is made.

Inasmuch as Section 1181.54(g) was duly promulgated, it is presumptively valid under state and federal law, *see Quern v. Mandley*, 436 U.S. 725 (1978), and this Court will not disturb DPW's exercise of administrative discretion in the absence of fraud, bad faith, abuse of discretion or clearly arbitrary action, *Savko v. Department of*

*Public Welfare,* 47 Pa. Commonwealth Ct. 168, 407 A.2d 152 (1979).

The Petitioners contend that 55 Pa. Code §1181.54 (g) is arbitrary and unreasonable. In support of this allegation, they raise numerous issues which we will address *seriatim.*

Initially, Petitioners argue that Section 1181.54(g) is arbitrary in that it fails to differentiate between reclassification appeals initiated by recipients, and those initiated by providers on behalf of recipients, and that it is unreasonable for DPW to recoup overpayments from providers who did not participate in and had no control over the recipients' appeals. On the basis of this assertion, Petitioners conclude that recoupment should be made from the actual recipients of the services, and they cite as controlling a federal regulation allowing for recoupment from an applicant or recipient which regulation they contend conflicts with Section 1181.54(g). *See* 42 C.F.R. §431.230(b) (1987).

DPW contends that the regulation is reasonable because it protects both the providers' interest in payment and DPW's need to control costs and assure quality of care, including the prevention of collusion by providers to prolong payments at higher rates, *i.e.,* skilled care. DPW may, of course, adopt controls on payments. *Temple University v. Department of Public Welfare,* 47 Pa. Commonwealth Ct. 22, 407 A.2d 92 (1979), *aff'd,* 490 Pa. 207, 415 A.2d 413 (1980), *appeal dismissed,* 449 U.S. 1005 (1980). Furthermore, Section 1181.54(g) only applies where DPW, through its ICT, has been forced to intervene to reclassify recipients.[7]

---

[7] The classification of recipients is ordinarily to be done by members of the providers' staff, including physicians responsible for the oversight of the recipients. 55 Pa. Code §§1181.54(a), 1181.54(f).

Petitioners argue that they, in good faith, ordered skilled care for the recipients. The fact remains, however, that DPW's ICT, in conformance with DPW regulations, properly reclassified the recipients to intermediate levels of care.[8]

We believe that the regulation, here, which sanctions providers for their failure to properly reclassify recipients, is neither unreasonable nor arbitrary merely because the providers have no control over whether or not a recipient appeals the reclassification. DPW, by Section 1181.54(g), is simply assuring that only *reasonable* costs will be reimbursed to the providers, *i.e.,* for the appropriate levels of care. *Medicenter Hospital v. Department of Public Welfare,* 78 Pa. Commonwealth Ct. 610, 468 A.2d 1156 (1983). Of course, Section 1181.54(g) furthers DPW's and the Commonwealth's legitimate interest in maintaining a solvent Medicaid Program. *Montgomery County Geriatric and Rehabilitation Center v. Department of Public Welfare,* 75 Pa. Commonwealth Ct. 248, 462 A.2d 325 (1983).

Petitioners, however, argue that Section 1181.54(g) is unreasonable because it permits DPW to recoup monies for services actually rendered by the providers to the recipients during the pendency of the recipients' reclassification appeals. Accordingly, the Petitioners, citing *Sewickley Valley Hospital v. Department of Public Welfare,* 81 Pa. Commonwealth Ct. 298, 474 A.2d 51 (1984), contend that there were no "overpayments" to be recouped because the monies paid by DPW were for services actually rendered by the providers, which services were reasonable and necessary pursuant to 42 C.F.R. §405.451(a) (1986). In support of their argument

_____

[8] We note that there are no sanctions against the providers where recipients appeal the *providers'* reclassifications. *See* 55 Pa. Code §1181.54(g).

that there are no "overpayments" to be recouped, the Petitioners cite various regulations requiring that providers afford residents the same level of care that they were receiving prior to the ICT reclassifications, 55 Pa. Code §§275.4(a)(3)(v)(C)(I), 1181.54(g); that residents may not be discharged for other than medical reasons, 42 C.F.R. §405.1121(k)(4) (1987); and that providers may collect for services from neither the recipients nor outside sources because payment from DPW is considered payment in full, Section 1406 of the Code, added by Section 3 of the Act of July 10, 1980, P.L. 493, 62 P.S. §1406.

Petitioners also contend that DPW's intent in promulgating Section 1181.54(g) was to prevent providers from initiating and/or participating in recipient appeals of reclassifications, rather than to discourage inadequate and improper utilization of review.

DPW, however, argues that the Petitioners are not entitled to the payment for the services in question because those services were unnecessary. We agree. DPW is required to reimburse providers only for those services which are reasonable and necessary. *Medicenter Hospital.* The skilled care provided to the recipients here was clearly not necessary or reasonable because, pursuant to DPW's regulations defining skilled and intermediate care levels, the recipients were found to be eligible for and required only intermediate care. The Petitioners did not appeal the reclassifications. We agree with DPW that the purpose of Section 1181.54(g) is to discourage improper and inadequate utilization of review, and we find that DPW was entitled to recoup the payments for services provided at an unnecessarily high level during the pendency of the recipients' appeals.

Petitioners also contend that Section 1181.54(g) is contrary to federal law, which provides for recoupment

of overpayments from the applicants or recipients. The relevant federal regulation provides that "[i]f the agency's action is sustained by the hearing decision, the agency *may* institute recovery procedures against the applicant or recipient to recoup the cost of any services furnished the recipient, to the extent that they were furnished solely by reason of this section." 42 C.F.R. §431.230(b) (emphasis added). Preliminarily, we note that Section 1181.54(g) was submitted as part of the Commonwealth's State Plan to the Health Care Financing Agency (HCFA), a federal agency, which subsequently approved the State Plan. This Court will give great deference to the HCFA's approval of the State Plan, as well as, to DPW's interpretation of its own regulations. *See Troutman v. Cohen*, 661 F. Supp. 802 (E.D. Pa. 1987). Such deference, however, is not absolute and will be given only if DPW's actions are reasonable and consistent with federal regulations. *Id.*

While it is true that Section 431.230(b) permits the recovery of overpayments from applicants or recipients, the use of the word *may* in the regulation clearly neither mandates such recovery nor precludes DPW from adopting other methods of recovery, such as recoupment from providers pursuant to Section 1181.54 (g). Section 431.230(b) permits DPW to tax recipients, no matter how diligent the providers have been in their utilization review, and no matter whose decision is appealed, whether it be the provider's or a state agency's decision. Section 1181.54(g) is simply a further sanction to deal with inadequate and improper provider behavior. Accordingly, we find no conflict between Section 1181.54(g) and Section 431.230(b).

Petitioners also contend that Section 1181.54(g) is contrary to Title XIX because the regulation does not provide for prompt and full reimbursement sufficient to encourage provider participation in the Medicaid Pro-

gram. *See* 42 C.F.R. §§447.15, 447.204 (1987). We disagree. DPW has promulgated extensive regulations providing for the prompt and sufficient payment of providers. Section 1181.54(g) is simply a means of recouping overpayments to which the providers were not entitled in the first place. Accordingly, Section 1181.54(g) is not contrary to the federal enabling statute.

Additionally, Petitioners argue that DPW's failure to produce two subpoenaed witnesses and subpoenaed documents constituted a violation of procedural due process by denying them the opportunity to establish the unreasonable and arbitrary implementation of Section 1181.54(g). They allege that DPW's decisions regarding whether or not to apply Section 1181.54(g) were based solely on the number of recipients filing appeals per facility and whether or not the providers participated in the appeals, and that DPW's denial of the subpoena requests had the effect of denying them their right to be heard on those issues. DPW, however, argues that it acted within the scope of its authority in properly limiting discovery.

Preliminarily, we note that the Petitioners had a right to be heard at a meaningful time and in a meaningful manner, *Armstrong v. Manzo,* 380 U.S. 545 (1965), and that due process applies to administrative tribunals in matters involving substantial property rights. *See Conestoga National Bank of Lancaster v. Patterson,* 442 Pa. 289, 275 A.2d 6 (1971). Discovery matters, however, are within a tribunal's discretion. *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971).

The Petitioners, here, were notified well in advance of the June 24, 1985 hearing that they were to complete, by June 14, 1985, all discovery, including requests for production of documents and requests for the issuance of subpoenas. The Petitioners did not meet this deadline and requested the issuance of subpoenas just one week before the hearing. Inasmuch as the Peti-

tioners engaged in no pre-hearing discovery and sought to develop evidence at the hearing rather than prior to it, and inasmuch as the request for subpoenas was untimely, we can find no error in the action of the Deputy Executive Director in vacating the subpoenas of two witnesses.

The Petitioners' final contention is that the notices of reclassifications sent to the recipients were too general and therefore inadequate to afford them due process. *Fifty Residents of Park Pleasant Nursing Home v. Department of Public Welfare,* 94 Pa. Commonwealth Ct. 491, 503 A.2d 1057 (1986). We agree with DPW, however, that the issue of the propriety of the notices of the reclassifications to the recipients was not an issue before the Hearing Officer, and, therefore, may not be raised on appeal. *See* Pa. R.A.P. 1551(a). Regardless, Petitioners stipulated on the record that the sole issue in this case involved the promulgation and application of Section 1181.54(g), and stipulations of record are binding upon the parties. *Stinner v. Stinner,* 300 Pa. Superior Ct. 351, 446 A.2d 651 (1982).

We will, therefore, affirm the order of DPW.

## ORDER

The order of the Department of Public Welfare in the above-captioned matter is affirmed.

---

DISSENTING OPINION BY JUDGE DOYLE:

I respectfully dissent. The Department of Public Welfare (DPW) cannot have it both ways; it cannot by regulation *order* the provider to continue a patient's care at the higher level, and by the same regulation deny the provider the reasonable cost of that care when the provider itself has not appealed. I cannot agree with the majority that the services were unnecessary; the services were necessary because DPW ordered the provider to provide them.