**ARMSTRONG COUNTY MEMORIAL HOSPITAL, Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 2013.

Decided Jan. 8, 2014.

Daniel M. Mulholland, III, Pittsburgh, for petitioner.

Sallie A. Rodgers, Senior Assistant Counsel, Harrisburg, for respondent.

BEFORE: LEAVITT, Judge, BROBSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Armstrong County Memorial Hospital (Hospital) appeals from the April 1, 2013, order of the Department of Public Welfare (DPW), Bureau of Hearings and Appeals (BHA), which adopted an Administrative Law Judge's (ALJ) recommendation to deny Hospital's appeal of DPW's implementation of a new All Patient Refined–Diagnosis Related Group (APR–DRG) payment system. We affirm.

Medicaid is a cooperative state-federal program through which the federal government provides funds to the states to assist the poor, elderly, and disabled in receiving medical assistance (MA). 42 U.S.C. § 1396. The states establish "eligible groups, types and range of service, payment levels for services, and administrative and operating procedures" and pay for services directly to the individuals or entities furnishing the services. 42 C.F.R. § 430.0. In Pennsylvania, DPW delivers Medicaid benefits through two payment systems: (1) fee-for-service (FFS), where the care is paid for on a claim-by-claim basis; and (2) managed care (MC), where a contracting organization is paid on a monthly, fixed-fee basis per enrollee. *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 163 (Pa.Cmwlth.2013).

Under the APR–DRG payment system, DPW groups a compensable MA discharge into an appropriate category, which has a relative weight assigned to it. DPW multiplies this weight by the hospital's MA FFS inpatient APR–DRG base rate to determine the reimbursement amount for the MA provided.

In anticipation of the Act of July 9, 2010, P.L. 336 (Act 49), which amended section 443.1(1.1) of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended, added by* Section 5 of the Act of July 31, 1968, P.L. 904, 62 P.S. § 443.1(1.1), DPW modified its calculation of a hospital's base rate (base-rate methodology) so that instead of using a hospital's individual costs to determine a hospital's base rate, as was done before July 9, 2010, DPW first determines a statewide-average base rate that represents the statewide average cost-per-discharge multiplied by 90 percent.[1] DPW then adjusts the state-

---

1. DPW submitted two State plan amendments

addressing the changes to the Center for

wide-average base rate to account for regional labor costs, teaching status, average capital costs, and MA patient levels to determine each hospital's base rate. *See* section 443.1(1.1)(ii) of the Code, 62 P.S. § 443.1(1.1)(ii). Using the new base-rate methodology, DPW set Hospital's base rate at $6,521.49, effective July 1, 2010.[2]

Hospital appealed to the BHA, and on September 26, 2012, the ALJ held a hearing. Hospital presented the testimony of Diane Emminger, Vice President of Information Services at Hospital. Emminger testified that Armstrong County has an aging, decreasing population, a higher percentage of MA beneficiaries than the state average, and a lower per-capita income than the state average. (N.T. at 18; *see also* Ex. A1.) Emminger also stated that a shortage of primary care physicians (PCPs) exists in Armstrong County. (N.T. at 22–23.) Emminger noted that, in light of the economic and demographic conditions in Armstrong County, Hospital faces serious difficulties in hiring new staff and struggles to maintain and upgrade its clinical equipment. (*Id.* at 24.) Emminger testified that Hospital's problems are compounded by its location in a HealthChoices area, in which MC is mandated for MA beneficiaries. (*Id.* at 29.) Emminger con-

cluded that Hospital's inadequate base rate adversely impacts MA beneficiaries' access to services. The ALJ found that "Emminger provided credible testimony regarding her analysis of MA rate calculations and the effect on MA managed care organization reimbursement." (ALJ's Findings of Fact, No. 14.)

DPW presented the testimony of Leesa Allen, Chief of Staff for the Office of MA Programs at DPW, and Cassandra Ly, a medical economist for DPW. Allen is responsible for obtaining federal funding at Hospital. Allen testified about the available MA programs and the new base-rate methodology. (N.T. at 94–97). Allen recalled that DPW published the proposed changes to the base-rate methodology and received no comments and that DPW's State plan amendments received the Center for Medicare and Medicaid Services' (CMS) approval. The ALJ found Allen's testimony "credible as it related to the implementation of Act 49 and administration of the MA Program." (ALJ's Findings of Fact, No. 12.)

Ly outlined the base-rate methodology and described the MA dependency adjustment (dependency adjustment), which the base-rate methodology uses to consider MA patient levels.[3] The ALJ found Ly's

Medicare and Medicaid Services, a federal agency within the United States Department of Health and Human Services, which approved the changes.

**2.** On June 26, 2010, DPW published a notice in the Pennsylvania Bulletin announcing its intention to revise, *inter alia,* its base-rate methodology but received no responses regarding the announcement. By letter dated February 22, 2011, DPW notified Hospital that DPW intended to implement an APR–DRG payment system for all inpatient acute-care hospital services. The letter stated that Hospital's new base rate was $6,521.49, an increase over Hospital's prior base rates. (R.R. at 25a, 27a.)

**3.** A hospital can qualify for the dependency adjustment if it ranks at the 90th percentile or above in: (1) MA acute-care patient days; (2) percentage of MA acute-care inpatient days to total acute-care days; (3) MA acute-care inpatient discharges; and (4) percentage of MA acute-care inpatient discharges to total acute-care inpatient discharges. (N.T. at 133–35.) These criteria included both FFS and MC days and FFS and MC discharges in determining a hospital's totals. A hospital can also qualify if its total number of MA days or its percentage of MA acute-care inpatient days compared to total acute-care inpatient days exceeds the statewide average, including both FFS and MC days when counting a hospital's totals. (*Id.*)

testimony "credible as it related to her involvement with inpatient hospital rates for the [FFS] Program, disproportionate share payments, and supplemental payments." (ALJ's Findings of Fact, No. 13.)

On March 21, 2013, the ALJ recommended that Hospital's appeal be denied. On April 1, 2013, DPW adopted the ALJ's recommendation in its entirety. Hospital now appeals to this court.[4]

Hospital argues that DPW did not calculate the base rate in accordance with section 443.1(1.1)(ii)(B) of the Code, 62 P.S. § 443.1(1.1)(ii)(B), because DPW did not consider Hospital's location in a HealthChoices area in its base-rate methodology. We disagree.

Section 443.1(1.1) of the Code, 62 P.S. § 443.1(1.1), addresses, *inter alia*, payment methods and standards by which DPW calculates payments to acute-care hospitals for inpatient services. Section 443.1(1.1)(ii) states that:

> ... [DPW] shall use payment methods and standards that provide for all of the following:
>
> (A) Use of the All Patient Refined–Diagnosis Related Group (APR/DRG) system for the classification of inpatient stays into DRGs.
>
> (B) Calculation of base DRG rates, based upon a Statewide average cost, which are adjusted to account for a hospital's regional labor costs, teaching status, capital and *medical assistance patient levels* and *such other factors as [DPW] determines may significantly impact the costs that a hospital incurs in delivering inpatient services* and which may be adjusted · based on the

assessment revenue collected under Article VIII–G.

> (C) Adjustments to payments for outlier cases where the costs of the inpatient stays either exceed or are below cost thresholds established by the department.

62 P.S. § 443.1(1.1)(ii) (emphasis added).

Hospital asserts that the evidence clearly demonstrated that Hospital's location in a HealthChoices area creates "additional burdens and issues" that distinguish it from hospitals in other counties. However, the base-rate methodology considers a hospital's MA business in the dependency adjustment by providing a cost adjustment for hospitals with high MA levels. Three of the six ways to qualify for the dependency adjustment consider the proportion of MA business as opposed to examining sheer volume. Thus, DPW has fulfilled the mandate of the statute to adjust the base rate based upon MA patient levels. Nothing in the statute indicates that a hospital located in a HealthChoices area must be afforded a cost adjustment or that the proportion of FFS discharges to MC discharges must be considered by the base-rate methodology.

■ Hospital argues that DPW's base-rate methodology violates 42 U.S.C. § 1396a(a)(30)(A) by failing to consider that Hospital serves a disproportionate number of low-income patients with special needs. We disagree.

A State plan for MA must—

> ...
>
> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited

4. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and *are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area* . . . .

42 U.S.C. § 1396a(a)(30)(A) (emphasis added).

■ In order to prove that DPW violated 42 U.S.C. § 1396a(a)(30)(A), the burden is on Hospital to present evidence defining the appropriate geographic areas to consider and permitting a comparison of the access to services enjoyed by the general population in the discrete geographical areas at issue. *Clark v. Richman,* 339 F.Supp.2d 631, 644 (M.D.Pa.2004).

When making their comparison of access, plaintiffs may demonstrate unequal access through a variety of indicators, such as: (1) the level of reimbursement to participating [provider] in the market and the costs of providing such services; (2) the level of [provider] participation in the MA program; (3) whether there are reports that recipients are having difficulty obtaining care; (4) whether the rate at which MA recipients utilize . . . services is lower than the rates at which the generally insured population uses those services; and (5) whether DPW agents have admitted that reimbursement rates are inadequate.

*Id.*

Section 1396a(a)(30)(A) only requires that a state achieve certain results and does not mandate a method or process by which the state must set its reimbursement rates. *See Rite Aid, Inc. v. Houstoun,* 171 F.3d 842, 853 (3d Cir.1999) ("We will not read back from section [1396a(a)(30)(A) ] to say that the section implicitly requires that a state follow a specific procedure or demonstrate that it has reviewed each factor."). Moreover, CMS's approval of the State plan amendments is entitled to deference. *Centennial Spring Health Care Center v. Department of Public Welfare,* 115 Pa.Cmwlth. 450, 541 A.2d 806, 810 (1988).

Hospital needed to present evidence comparing MA beneficiaries' access to services to that of the general population in order to demonstrate inadequate access to MA. Hospital presented evidence of a shortage of PCPs, its difficulties maintaining equipment, and of demographic challenges inherent in operating a hospital in Armstrong County. However, these afflictions plague many hospitals operating in the present healthcare climate.

Hospital failed to present evidence permitting a comparison of service levels between MA beneficiaries and the general population with the degree of specificity discussed in *Clark. See Clark,* 339 F.Supp.2d at 644. Hospital presented no empirical data of inadequate services or specific instances of unsatisfactory care traceable to the new base rate. Therefore, Hospital did not meet its burden of showing that care and services are not available to MA beneficiaries to the extent that they are available to the general population.

■ Hospital next argues that the base-rate methodology violates the Equal Protection Clauses [5] of the United States and

5. The Equal Protection Clause of the United States Constitution directs that no state shall "deny to any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The Pennsylvania Constitution, Article 1, Section 26 affords similar protection, and our analysis of both federal and state equality protections proceeds under the same stan-

the Pennsylvania Constitutions. We disagree.

The Equal Protection Clause "does not obligate the government to treat all persons identically, but merely assures that all similarly situated persons are treated alike." *Small v. Horn,* 554 Pa. 600, 615, 722 A.2d 664, 672 (1998). Because Act 49 does not burden a fundamental right or implicate a suspect class, the appropriate level of scrutiny is rational review. *Burns v. Public School Employees' Retirement Board,* 853 A.2d 1146, 1152 (Pa.Cmwlth.2004) ("Where the challenged statute does not burden fundamental rights and does not implicate a suspect or quasi-suspect classification, it survives equal protection analysis if it is rationally related to a legitimate government interest.").

As a whole, the base-rate methodology furthers the legitimate and complicated goal of administering MA in the Commonwealth. We find nothing irrational in the methodology's approach. Specifically, the dependency adjustment has a rational and substantial relation to Act 49's requirement that DPW utilize a base-rate methodology that considers a hospital's MA patient level. Therefore, the APR–DRG payment system does not violate the Equal Protection Clause.

Accordingly, we affirm.

### ORDER

AND NOW, this *8th* day of *January,* 2014, we hereby affirm the April 1, 2013, order of the Department of Public Welfare, Bureau of Hearings and Appeals.

dards. *Burns v. Public School Employees' Retirement Board,* 853 A.2d 1146, 1152 n. 9