IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David T. Parker, : 
                Petitioner : 
: 
: 
          v. : No. 222 C.D. 2017
: Submitted: September 15, 2017
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT            FILED: November 29, 2017

        David T. Parker (Claimant), *pro se*, petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) denying his claim for benefits under Section 402(e) of the Unemployment Compensation Law (Law), 43 P.S. §802(e).[1] The Board concluded that Claimant committed disqualifying willful misconduct by submitting time records that overstated the amount of time he counseled clients. Claimant argues that he had good cause for his conduct because Parkside Human Services (Employer) overloaded him with work and retaliated against him for making a report to labor mediators. Finding no merit to these contentions, we affirm.

        Claimant worked full-time for Employer as an outpatient therapist from September 13, 2006, through June 6, 2016, when he was placed on administrative

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e), which states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct...."

leave pending Employer's investigation into Claimant's falsification of his billing records. Employer discharged Claimant on August 17, 2016, for falsifying billing documents for four clients.

On September 2, 2016, Claimant filed for unemployment compensation benefits. The Erie Unemployment Compensation Service Center denied benefits, finding that Claimant had willfully violated a work rule and did not present good cause for his actions. Claimant appealed, and a hearing before a Referee was held on October 26, 2016.

At the hearing, Employer presented the testimony of Art Fastman, its executive director. Fastman testified that Claimant was an outpatient therapist who counseled Medicaid[2] clients suffering from addiction. Fastman explained that Claimant was required to bill these clients based on a fee-for-service schedule set by Medicaid. Pursuant to Medicaid's schedule, Claimant was required to bill in increments of 30 or 60 minutes. A session that lasts less than 22 minutes is not billable. A session that lasts between 22 and 52 minutes must be billed at the rate set for a 30-minute session based on Medicaid's "rounding rule." Notes of Testimony, 10/26/2016, at 17 (N.T. __). A session that lasts from 53 to 60 minutes is billable at the rate set for a 60-minute session. Fastman stated that Employer is obligated as an approved Medicaid provider to follow Medicaid's billing policy. Failure to comply jeopardizes Employer's license to service Medicaid clients.

Fastman testified that Claimant, a ten-year employee, was aware of Medicaid's billing policy and Employer's policy against falsifying billing

---

[2] "Medicaid is a cooperative state-federal program through which the federal government provides funds to the states to assist the poor, elderly, and disabled in receiving medical assistance[.]" *Armstrong County Memorial Hospital v. Department of Public Welfare*, 83 A.3d 317, 318 (Pa. Cmwlth. 2014) (citing 42 U.S.C. §1396).

documents.[3] All employees learn of the policies at orientation and are advised of updates through e-mail reminders. Further, all of the policies are posted on the internet.

Fastman asserted that Claimant falsified four billing documents on May 31, 2016. Fastman reviewed a video recording made on that day from a camera positioned outside of Claimant's office.[4] The video revealed that Claimant's first scheduled client was a no-show, yet Claimant submitted a billing document for a 60-minute session. The second client was in the office for 31 seconds and Claimant billed for a 60-minute session. The third client was in the office for six minutes and Claimant billed for a 30-minute session. The fourth client was in the office for 23 seconds and Claimant billed for a 30-minute session.

Claimant testified that he was given an opportunity to view the videotape, but declined. He offered that he knew "how [Employer] functioned" and "did not want to view the video, because, you know, it would've – not – it'd have been damning for me anyway." N.T. 13.

Claimant stated that the client who did not appear for his appointment probably arrived later in the day for his session. Claimant surmised that he failed to change the appointment time on the billing document. As for the other three clients, Claimant did not believe they were only present for a few seconds or minutes. He explained that when he completes a billing document for a session, he charges "the

---

[3] Employer submitted its Standards of Professional Behavior Policy. Standard 8.1 prohibits "falsifying any documents or records … including but not limited to, billing documents[.]" Certified Record, Item No. 12, Employer Policy at 3.

[4] Fastman explained that there are 16 cameras in Employer's office building. The cameras are located only in the waiting areas and hallways. There are no cameras inside the offices used for counseling.

next unit up … which would be a half hour." N.T. 14. He did not remember charging anyone for a 60-minute session on May 31, 2016.

Claimant testified that his caseload had increased dramatically over the years. He was working nine hours a day and could not stay on top of the work. Claimant approached his supervisor several times about his workload, but did not receive any help. The Referee asked Claimant why having an increased caseload would make him "put a different time on the – on this – on the sheet than you actually spent[.]" N.T. 15. Claimant replied:

> So that I could see as many clients as I could, because my clients were not being seen. My clients – I was being pulled to do [other work]. It's not in my job description. So time was an issue.

*Id.*

The Referee found that Employer established that it has policies prohibiting falsification of billing documents and instructing employees on how to calculate the appropriate session rate. The Referee further found that Claimant knew of these policies and violated them by submitting billing documents for four patients that overstated the amount of time Claimant spent with each patient. The Referee also noted Claimant's admission that "he did cut the time short that he spent with clients because he was busy with all his duties." Referee Decision (10/31/16) at 2; Findings of Fact No. 7. The Referee resolved any conflict in the testimony in favor of Employer, *i.e.*, Fastman was deemed credible; Claimant's explanations for his conduct were found not credible.

Claimant appealed to the Board, stating as follows:

> I acknowledge that I did not see my clients for the full time I billed for. I spent the time doing paperwork because management did not allot time to do the paperwork. My caseload was higher than the regulations allowed and I was forced to do

4

> work that was not on my job description. I did not break any rules first, management did.

C.R., Item No. 14, Petition for Appeal to the Board at 2.

The Board affirmed the Referee's decision, concluding that Employer established that Claimant falsified four billing documents.[5] The Board found that Claimant was not credible and did not establish good cause for his conduct. Claimant petitioned for this Court's review.

Before this Court,[6] Claimant argues (1) that his actions were not willful because they were a result of his excessive workload; (2) that the Board ignored testimony showing he was required to do work that was not part of his job description; (3) that Employer created a situation that made it impossible for him to execute his job responsibilities properly; and (4) that he was discharged in retaliation for speaking to two federal labor mediators that were brought in to improve relationships between management and staff.

We begin with a review of the law on willful misconduct. Although not defined in the Law, the courts have established that it is:

---

[5] In recounting the evidence, the Board omitted the fact that Claimant billed time for a client who did not appear for his scheduled appointment. Instead, the Board found that this client was present for four minutes and Claimant billed for 60 minutes. At the hearing, Fastman did testify that one of the clients appeared for four minutes and Claimant billed for a 60-minute session. N.T. 5. However, Fastman later corrected himself and stated that Claimant billed for a 60-minute session where the client had not appeared at all. N.T. 11.

[6] This Court's scope of review is to determine whether there was a constitutional violation, a violation of Board procedures, or a decision not in accord with the law, or whether necessary findings of fact are supported by substantial evidence. *Brown v. Unemployment Compensation Board of Review*, 49 A.3d 933, 936 n.4 (Pa. Cmwlth. 2012). Whether an employee's conduct amounts to willful misconduct is a question of law subject to this Court's review. *Groskin v. Unemployment Compensation Board of Review*, 519 A.2d 1098, 1099 (Pa. Cmwlth. 1987).

(1) an act of wanton or willful disregard of the employer's interest;

(2) a deliberate violation of the employer's rules;

(3) disregard of standards of behavior which the employer has a right to expect of an employee; [or]

(4) negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer.

*Altemus v. Unemployment Compensation Board of Review*, 681 A.2d 866, 869 (Pa. Cmwlth. 1996). It is the employer's burden to establish that a claimant's conduct constituted willful misconduct. *Conemaugh Memorial Medical Center v. Unemployment Compensation Board of Review*, 814 A.2d 1286, 1288 (Pa. Cmwlth. 2003).

Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule and its reasonableness, and that the employee was aware of the rule. *Bishop Carroll High School v. Unemployment Compensation Board of Review*, 557 A.2d 1141, 1143 (Pa. Cmwlth. 1989). Stated another way, "the employer must show the existence of the rule and its *knowing* violation." *BK Foods, Inc. v. Unemployment Compensation Board of Review*, 547 A.2d 873, 875 (Pa. Cmwlth. 1988) (emphasis in original). Once employer meets its burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule. *Gillins v. Unemployment Compensation Board of Review*, 633 A.2d 1150, 1156 n. 3 (Pa. 1993). "Good cause is established 'where the action of the employee is justified or reasonable under the circumstances.'" *Roberts v. Unemployment Compensation Board of Review*, 977 A.2d 12, 16 (Pa. Cmwlth. 2009). "The deliberate falsification of employ[er's] records constitutes a conscious disregard of standards of behavior which an

6

employer has the right to expect from his employees." *Nolan v. Unemployment Compensation Board of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

Before this Court, Claimant does not contend that he was unaware of the work rule against falsifying billing documents or that he did not falsify billing documents. Instead, he raises three issues that can be summarized as an attempt to show good cause for his actions, which were the result of an impossible workload.

The Board responds that even if Claimant was overworked and had to spend less time with clients, it does not justify falsifying the amount of time he spent with them or billing Medicaid for sessions that never occurred.

We agree with the Board. Even assuming Claimant was overworked, it did not justify inaccurate billing statements. Claimant cites no authority to support his argument that being overworked somehow justified his actions. We are not persuaded.

Claimant's fourth, and final, claim is that Employer targeted him for discharge because he complained about Employer to two federal labor mediators assigned to improve relationships between management and staff. Claimant posits that the day after he complained, Employer placed him on administrative leave to prevent him "from blowing the whistle to the auditors, who were due in the following week, that management was engag[ing] in misconduct by removing clients from [his] caseload just prior to the site visit." Claimant Brief at 5.

The Board responds that because Claimant did not raise this issue before the Referee or the Board, it is waived and unsupported by any evidence of record. Claimant concedes he did not raise this issue before the Referee, offering only that "he did not feel that the hearing was the proper venue to disclose that

7

information because he had filed a whistle blowing charge against management." Claimant Brief at 7.

We agree with the Board. It is well settled that issues not raised before the Referee or the Board are waived for purposes of appeal to this Court. *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 611 (Pa. Cmwlth. 2011) (citing Section 703(a) of the Administrative Agency Law, 2 Pa. C.S. §703(a)[7] and PA. R.A.P. 1551(a)[8]). Thus, Claimant's fourth issue is waived.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

---

[7] It provides:

> A party who proceeded before a Commonwealth agency under the terms of a particular statute shall not be precluded from questioning the validity of the statute in the appeal, but such party may not raise upon appeal any other question not raised before the agency (notwithstanding the fact that the agency may not be competent to resolve such question) unless allowed by the court upon due cause shown.

2 Pa. C.S. §703(a).

[8] It provides:

> No question shall be heard or considered by the court which was not raised before the government unit except:
> (1)    Questions involving the validity of a statute.
> (2)    Questions involving the jurisdiction of the government unit over the subject matter of the adjudication.
> (3)    Questions which the court is satisfied that the petitioner could not by the exercise of due diligence have raised before the government unit. If, upon hearing before the court, the court is satisfied that any such additional question within the scope of this paragraph should be so raised, it shall remand the record to the government unit for further consideration of the additional question.

PA. R.A.P. 1551(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David T. Parker, :
          Petitioner :
           :
          v. : No. 222 C.D. 2017
           :
Unemployment Compensation :
Board of Review, :
          Respondent :

# **O R D E R**

AND NOW, this 29th day of November, 2017, the order of the Unemployment Compensation Board of Review, dated January 18, 2017, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge